# Snyder v. Pennsylvania Railroad Company, Appellant.

*Negligence — Master and servant — Pump — Valve — Scalding water—Insufficient evidence of negligence.*

1. In an action by an employee against his employer to recover damages for injuries from scalding water issuing from the nozzle · of a pump from which the plaintiff was drawing water, the plaintiff is not entitled to have his case submitted to the jury, where he

testifies that the valve of the pump whirled around and threw the water upon him, that prior to the accident there had been a leak at the stem of the valve, and that this leak resulted from defective packing, but offers no evidence except his own unexpert opinion that the defective packing did or would cause the valve to whirl or move; while five disinterested experts for the defendant testify that it was physically impossible to force open a valve of the design in question with the pressure indicated, even if all the packing around the stem were removed, for the reason that the packing did not control the action of the valve, but was simply to prevent leaking around the stem.

2. In such a case in the absence of competent evidence showing that if there were defective packing around the stem which caused the valve to fly open permitting the escape of water, the jury cannot be permitted to guess that such was its effect upon the valve. .

Argued Nov. 6, 1912. Appeal, No. 192, Oct. T., 1912, by defendant, from judgment of C. P. Allegheny Co., Fourth Term, 1907, No. 277, on verdict for plaintiff in case of H. J. Snyder v. Pennsylvania Railroad Company. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before HAYMAKER, J.

The facts relating to the accident are set forth in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $5,000. Defendant appealed.

*Error assigned,* among others, was in refusing binding instructions for defendant.

*James R. Miller,* of *Patterson, Sterrett and Acheson,* for appellant, cited: Alexander v. Water Co., 201 Pa. 252.

*Lawrence B. Cook,* for appellee, cited: Hughes v. Fayette Mfg. Co., 214 Pa. 282; Sopherstein v. Bertels, 178 Pa. 401; Kingan v. Traction Co., 5 Pa. Super. Ct. 436;

Maines v. Harbison-Walker Co., 213 Pa. 145; Mooney v. Lumber Co., 154 Mass. 407 (28 N. E. Repr. 352).

OPINION BY MR. JUSTICE MESTREZAT, January 6, 1913:

This action was brought by the plaintiff to recover damages for injuries which he alleges he sustained by reason of the negligence of the defendant company. He was employed in the power plant or electric light station of the defendant at Pittsburgh as a fireman, and his duties also required him to clean the boilers and to do such other work about the plant as he was directed to do by his superiors. At the time of the accident he had been employed at the plant for about a year and a half.

The amended statement avers that on May 17, 1906, the plaintiff was instructed to clean up or scrub the engine room, and as a means of doing the work he was compelled to turn on the valve on a pump located in the plant for supplying water for such purposes; that he turned the valve part way on but on account of it being defective, the water was allowed to come on with full force, and the force of the water on account of the defect in the valve forced the valve entirely open; that the water which came from the pump was very hot and contained a strong solution of sodiac; that by reason of the strong pressure on the water it was thrown on him, scalding him badly; that the injuries to the plaintiff were caused by the carelessness and negligence of the company in not having a safe and proper valve in the pump but in having a defective valve therein, and in not repairing the defect after notice of it had been given defendant. The statement further avers that the defendant had notice of the valve being defective for some time prior to the accident, and that the plaintiff had notified the defendant's chief engineer of the defective condition of the valve.

The plaintiff relies solely on his own testimony to sustain the allegation of the defective condition of the valve. From his testimony it appears that in the boiler

room of the plant there was a pump used for pumping hot water into the boiler from a tank located above it, and screwed to the top of the pump was a pipe or nipple about six inches long on the top of which was mounted a globe angle valve. Sodiac was placed in the water of the tank for the purpose of eating the scales off the boilers. On the day of the accident, the plaintiff, for the purpose of securing water for scrubbing the floor of the engine room, took a bucket in his left hand and went to the pump. He testifies that he opened the valve partly with his right hand, and when he removed his right hand from the valve to place his left hand on it the water threw the valve wide open which allowed the water to come out with force falling on and scalding him severely. He also testified that the packing around the stem of the valve to keep it from leaking or to keep it tight was eaten by the sodiac; that the valve was defective or worn out and that the strong pressure of water was caused by the defective valve. He further testified that about a week before the accident he notified the chief engineer that the valve was leaking, that if it was not fixed somebody would be hurt, and that the chief engineer said he would have it fixed. By reason of this promise he continued his services. He admitted that there had been a "goose neck" or siphon-shaped pipe attached to the valve to carry the water out from the pump and into a bucket, but denied that it was there at the time of the accident.

The plaintiff says the leak referred to by him was around the stem, and the water which burned him came out of the nozzle of the valve. In reply to questions by his counsel, he further testified as follows: "Q. You say you turned on the valve? A. I opened the valve part way open. Q. What happened then? A. The force of the water threw this valve wide upon. Q. Now, why? What caused that condition, do you know? A. A defective valve. Q. Well, now, wherein was the valve defective? A. In the first place, the valve—the packing of the valve was eaten out. Q. By this—? A. By this

sodiac." On cross examination the plaintiff testified: "Q. I want to know how you knew that the valve was ever defective. A. I knew it at the time I reported it to Mr. Brown....... Q. It isn't true that you can tell whether a valve is defective or not by putting your hand on it? A. No, sir. Q. How do you tell? A. You can see them leaking. For instance, you come in a boiler room and you see a valve sitting there leaking and the water coming out of the top and the steam around this stem, you know that valve ought to be packed. Q. That is all? A. Yes, sir. Q. And that is the way you found this valve was defective, first? A. Yes, sir....... Q. You say you knew that the valve had been defective? A. I did before, yes, sir. Q. And the only way you knew it was that the steam had been coming out of it, or it had been leaking? A. Not steam, water.......Q. Well, now, on the day you got hurt, when you went there was it leaking at all? A. I don't know......Q. And you didn't see any leak (at the time of the accident)? A. I didn't look for it. Q. You didn't see it, anyhow? A. No, sir."

The plaintiff called several other witnesses but none of them testified to the accident or corroborated him as to how the accident happened or the cause of it. The defendant company denies that the valve in question was defective or that the injuries of the plaintiff resulted from a defective valve. It alleges, and called several witnesses to show, that immediately before and after the accident there was in the outlet of the valve a "goose neck" or piece of pipe about eighteen inches long which had been there for months before and continuously after the accident through which water was drawn out of the pump; that a few days before the accident the plaintiff was found twisting the "goose neck" loose in the valve so that he could use it as a hose to squirt water over the floor, and the fact being reported to the chief engineer the latter reproved the plaintiff who promised not to do so again; that immediately after the accident the "goose

neck" was turned from its proper position pointing downward so that it pointed sideways and the force of the water coming out of it had whirled the valve around on the nipple. In addition to this, four witnesses testified that the valve was in perfect condition before and after the accident, and five disinterested witnesses, familiar with the construction as well as the use of valves by practical experience, testified that it was not physically possible to force open a valve of this kind with the water pressure stated by the plaintiff if all the packing were removed from around the stem. These witnesses testified that the packing was merely for the purpose of preventing leaking from around the stem.

At the close of the testimony the court declined to grant the request of the defendant for binding instructions, and having submitted the case the jury returned a verdict in favor of the plaintiff. Judgment was entered on the verdict and the defendant has taken this appeal.

On the trial of the cause the plaintiff was permitted, against the objection of the defendant, to amend his statement alleging as a ground of negligence, in addition to the defective valve, that prior to the accident he had given notice to the defendant of the defect and that the latter had agreed to remedy it. The action of the court in permitting the amendment is the subject of the fourth assignment of error. The view we take of the case requires us to consider only the first assignment which alleges error in the court in not withdrawing the case from the jury and directing a verdict for the defendant.

It goes without saying that the plaintiff cannot recover merely by proof of the accident. He must go further and show some negligent act on the part of the defendant company which resulted in his injuries. He attempts to do this by showing that the valve was "defective or worn out." If this were sustained by proper testimony it would give ground for his contention that the defendant was guilty of negligence which was the

cause of his injuries. When, however, his own testimony is examined, and that is the only testimony on the subject, it is found that it was simply the witness's opinion that the valve was defective by reason of the fact that the packing had been eaten by the sodiac which caused the leak from around the stem. The defective condition of the valve was, therefore, an inference drawn by the plaintiff himself from the existence of a leak which he testifies he had previously seen at the stem of the valve. Conceding that the leak indicated defective packing, there is no evidence which would warrant the jury in finding that the defective packing did or would cause the valve to whirl or move, as testified by the plaintiff, so as to permit the water to be discharged on him. The plaintiff introduced no other testimony to show that the packing around the stem was for any other purpose than for preventing leaking of the water from the valve. He did not attempt to show that it in any way controlled the action of the valve or that its entire absence would in any way affect the action of the valve. Certainly, in the absence of testimony showing that the packing was for a different purpose, it cannot be assumed that it was inserted around the stem of the valve for any other purpose than to prevent leaking. As the plaintiff testifies, the leak came from around the stem, but the water which scalded him came from the nozzle of the valve. The plaintiff's testimony did not disclose his competency to testify to the effect on the valve of defective packing around the stem. In fact, he did not attempt to show why it would have such effect. The valve might be considered defective because the packing had been eaten by the sodiac, but unless such defect caused the valve to fly open and permit the escape of the water it was not the cause of the plaintiff's injuries, and, hence, cannot impose liability on the defendant company. It would be strange indeed if the packing around the stem were inserted for the purpose of controlling the opening and shutting of the valve. It would hardly seem possible

that it could have such effect. At all events, it was incumbent on the plaintiff to show by witnesses competent to testify on the subject that there was defective packing and that it could have been the cause of the quick movement of the valve when he removed his hand from it. It cannot be inferred from nor is it established by the mere opinion of the plaintiff, who discloses no such technical knowledge as would qualify him to testify on the subject. If his theory were correct and such was the cause of the accident, he could readily have called practical experts which would have given the jury some basis on which to find the fact. There is an entire absence of such testimony and the jury was permitted to return a verdict on the belief simply of the plaintiff that the defective packing caused his injuries. The plaintiff says he has seen the inside of valves, and that is his only qualification for speaking as an expert. His experience as a fireman would hardly be sufficient to qualify him to speak authoritatively on the internal construction of a complicated valve. If such were the qualifications of an expert, the general public would be at the command of the injured party in almost every instance to sustain his cause of action. In the absence of competent evidence showing that if there were defective packing around the stem which caused the valve to fly open permitting the escape of the water, the jury cannot be permitted to guess that such was its effect upon the valve. There are other causes which, under the evidence, could have produced the condition of the valve which resulted in the plaintiff's injuries, and hence it was incumbent on him to show by proper evidence that his theory of the cause had some ground, disclosed by the testimony, to support it.

Of course, if there was evidence tending to support the plaintiff's contention, the question was for the jury and the court was right in submitting it. But it is perfectly manifest, we think, from the evidence introduced by the defendant that the defective packing around the stem was not the cause of the valve flying open and permit-

ting the water to escape. This is conclusively estabished unless the five disinterested experts who were perfectly familiar with the construction and operation of such valves testified falsely, and there is not a particle of testimony or any facts in the case which would warrant any such conclusion. Their unanimous judgment is that it would be physically impossible to force open a valve of this design with such water pressure if all the packing around the stem was removed, for the reason that the packing did not control the action of the valve but was simply to prevent leaking around the stem. If there were two views on this question, the plaintiff could readily have called experts to sustain the other view. This was not even attempted, unless we give to the plaintiff's opinion the value of the judgment of an expert. We can hardly do this even if we concede the value which he himself attaches to it.

For the reasons stated, we are of opinion that the learned court below should have affirmed the defendant's point and withdrawn the case from the jury.

The first and third assignments of error are sustained and the judgment is reversed.